Katie M. Charleston (SBN 252422)
Katie Charleston Law, PC
1905 S. New Market St., Ste. 169
Carmel, IN 46032
PH: 317-663-9190
Fax: 317-279-6258
Email: katie@katiecharlestonlaw.com

Attorney for Plaintiff, Laura F. Corsi (a/k/a Laura F. Romfh)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Laura F. Corsi, (a/k/a Laura F. Romfh), <br><br> Plaintiff, <br><br> vs. <br><br> English Riding Supply, Inc., ERS Equistrian, Inc., English Riding Supply, LLC, a Delaware Limited Liability Company (No. 3563640), English Riding Supply, LLC, a Pennsylvania Limited Liability Company (No. 3092814), English Riding Supply, LLC, a Delaware Limited Liability Company (6413166), English Riding Supply, LLC, a Pennsylvania Limited Liability Company (7425042), English Riding Supply Holdings (64131080), a Delaware Limited Liability Company, and NCK Capital, LLC, a Delaware Limited Liability Company, <br><br> Defendants. | Case No.: 2:25-cv-02238 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S COMPLAINT**

1

PLAINTIFF, by and through her attorneys, Katie Charleston Law, PC, for her Complaint against Defendants, alleges, on knowledge as to her own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This case arises from a poorly written[1] and unconscionably one-sided contract for the sale of 50% of Plaintiff's trademark rights and the grant of an exclusive license to use such trademark (the "2008 Agreement") between a (a) purchasing corporation (later succeeded by various related alleged successors and now controlled by private equity) constituting the Defendants, and (b) an individual sole proprietor (who later became an employee of Defendants) constituting the Plaintiff, whereby the purchasing corporation, which drafted the contract and which maintains a conflict of interest with respect to the success of the purchased trademark and brand by virtue of its ownership of competing brands, included unconscionable terms in the 2008 Agreement that it presented to Plaintiff, who was not represented by counsel in the transaction, which terms purport to (a) prevent Plaintiff seller, the eponymous brand's founder, from ever working during the term and thereafter, anywhere in the world in the equestrian apparel field in which she has spent a lifetime developing expertise and in which she has worked exclusively since 1996, without any contract term or any stated right of Plaintiff to ever terminate the agreement, (b) prohibit Plaintiff from ever selling her remaining 50% interest unless Defendants approve, which Defendants can decline to do for any reason or no reason, and (c) only requires Defendants to pay Plaintiff royalties on product lines that she exclusively designs and develops under the Mark, without requiring Defendants to ever sell any of the product lines she exclusively designs and develops, and, therefore,

---

[1] Among other deficiencies, and in addition to the other unlawful non-competition provisions argued herein, the Agreement (a) does not include any term or termination provisions despite otherwise referencing "during the term" in three distinct locations, (b) includes two Sections labeled 17, (c) denotes ERS' right of first refusal will be "under the terms herein set forth" or equal terms, but never specifies any other "terms herein set forth" relating to right of first refusal, and (d) references an Exhibit A, which was not included.

imposes no minimum royalty payment obligation on the Defendants, in perpetuity, all in exchange for a mere $12,000 and royalties only on those goods Defendants actually select from Plaintiff's exclusive designs, with no obligation to select any, all while Defendants have selected a new designer to supplant Plaintiff's design role.  Consequently, Plaintiff brings actions for:

(1)   declaratory judgment pursuant to Cal. C.C.P. § 1060 that the non-competition Sections 15 and 16 of a March 18, 2008 contract (the "2008 Agreement") (a true and correct copy of which is attached as Exhibit A) between Plaintiff and Defendant English Riding Supply, Inc. are void, illegal, and unenforceable per Cal. Bus. & Prof. Code § 16600, both as (a) between businesses (Count 1) and (b) between a prospective employee (who became an employee) of an employer (Count 2), and in each case for an injunction preventing enforcement of such clauses and for damages arising therefrom;

(2)   restitution under California's Unfair Competition Law at Cal. Bus. & Prof. Code § 17200 arising from the unlawful non-competition Sections 15 and 16 of the 2008 Agreement under California law (Count 3);

(3)   dilution by tarnishment under 15 U.S.C.A. § 1125(c) of Plaintiff's famous mark by Defendants (Count 4);

(4)   declaratory judgment pursuant to Cal. C.C.P. § 1060 voiding the 2008 Agreement as an unlawful restraint of trade under Cal. Bus. & Prof. Code § 16722 (Count 5);

(5)   damages for actual and/or constructive fraud under Cal. Civ. Code § 1572 and/or 1573 by virtue of Defendants, fiduciaries to Plaintiff as co-owners of the Mark and purportedly with mutual interest in the success of the venture under the 2008 Agreement, misleading and deceiving the Plaintiff into entering the 2008 Agreement (Count 6);

(6)   damages for Defendants' breach of contract by failing to timely and fully pay royalties due under the 2008 Agreement (Count 7); and

(7)   damages for Defendants' breach of contract of terms necessarily implied in the 2008 Agreement which granted exclusive resale rights worldwide, by failing to make a good faith effort to sell ROMFH branded products online and globally (not merely in the U.S. and Canada), failing to maintain the ROMFH mark, and by replacing Plaintiff as a designer and developer of the ROMFH brand (Count 8).

2.   Plaintiff seeks declaratory judgment, injunction, and damages exceeding $75,000, including, without limitation, restitution, incidental, consequential, compensatory, and general damages, as well as Defendants' profits and Plaintiff's reasonable attorney's fees and costs and pre-and post-judgment interest.

## JURISDICTION

3.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the State of Tennessee and citizens of the States of Pennsylvania, Delaware and Texas, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Furthermore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 15 U.S.C.A. § 1125(c).

## VENUE

4.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically:

a)   Plaintiff was a resident of Long Beach, California, within this district, at the time the 2008 Agreement was executed and for the majority of the time that Defendants' wrongful acts occurred;

b)   Defendants imposed restrictive non-compete covenants on Plaintiff while she was a California resident, violating California's strong public policy against non-compete agreements under Cal. Bus. & Prof. Code § 16600;

///

---

**PLAINTIFF'S COMPLAINT**
4

c) Plaintiff performed significant contractual obligations under the 2008 Agreement from California, including designing and developing equestrian products;

d) Plaintiff suffered financial harm while a California resident due to Defendants' failure to properly compensate her under the 2008 Agreement; and

e) Defendants engaged in unfair competition under Cal. Bus. & Prof. Code § 17200, which occurred, in part, in California.

**PARTIES**

5. Plaintiff is an individual who currently resides in Lawrence County, Tennessee, is a citizen of the State of Tennessee, and has been a Tennessee resident since June, 2024.

6. Plaintiff began riding horses when she was approximately 2 years old. She took lessons at various clubs and participated in dressage shows and events in the Pacific Northwest. She later attended Parsons School of Design in Los Angeles. With her riding experience and fashion design education, she started her clothing brand at 26 in 1997, re-inventing equestrian clothing with unique fits and airflow for women. After being featured in Dover Saddlery, her eponymous ROMFH equestrian clothing Brand took off.

7. During the first approximately 12 years from the commencement of the 2008 Agreement, Plaintiff was a resident of the State of California.

8. On August 29, 2002 an entity called English Riding Supply, LLC, file number 3563640, was registered as a domestic Delaware limited liability company. Upon information and belief this entity has a principal place of business in Pennsylvania.

9. On September 5, 2002 an entity called English Riding Supply, LLC, file number 3092814, was registered as a foreign limited liability company in Pennsylvania. Upon information and belief this entity has a principal place of business in Pennsylvania.

10. On September 20, 2002, ERS Equistrian (sic) Inc. was registered as a domestic Delaware corporation. Upon information and belief this entity has a principal place of business in Pennsylvania.

11.    The 2008 Agreement is solely between English Riding Supply, Inc., which is self-represented therein as "a corporation organized and under the laws of the State of Pennsylvania" with a place of business in Scranton, Pennsylvania, and Plaintiff, listed as a resident of Long Beach, California.

12.    The Pennsylvania Secretary of State does not reveal the registration of any corporation by the name of English Riding Supply, Inc.

13.    A December 31, 2021 Trademark Assignment with the USPTO filed by English Riding Supply, Inc.'s counsel states that English Riding Supply, Inc. is a Delaware corporation, not a Pennsylvania corporation.

14.    The Delaware Secretary of State also does not reveal the registration of any corporation by the name of English Riding Supply, Inc.

15.    From 2010-2023 Plaintiff was employed by one or more Defendant entities operating under the name of English Riding Supply.

16.    Years after entry of the 2008 Agreement, English Riding Supply, Inc.'s retained counsel neglected to timely file a Section 8 notice of ongoing use of the ROMFH mark with the USPTO, and the mark was canceled by the USPTO.  Subsequently, such counsel filed for new registration of the same mark (later registered as Reg. No. 5,712,805) on June 21, 2018, on behalf of English Riding Supply (not Inc., and not LLC), a Delaware Corporation.

17.    On November 22, 2021, a subsequent entity called English Riding Supply, LLC, file number 6413166, was registered as a domestic Delaware limited liability company.  Upon information and belief this entity has a principal place of business in Pennsylvania.

18.    On December 27, 2011 an entity called English Riding Supply, LLC, file number 7425042 was registered as a foreign limited liability company in Pennsylvania. Upon information and belief this entity has a principal place of business in Pennsylvania[2].

---

[2] Collectively, all 4 English Riding Supply, LLC entities, when referred to in this Complaint, are referred to as the "English Riding Supply, LLC Entities or ERS entities."

19.   On or about December 31, 2021 non-party, private equity firm NCK Capital, LLC completed a majority recapitalization of the ERS Entities.

20.   Per a December 31, 2021 Intellectual Property Assignment Agreement ERS Equistrian f/k/a English Riding Supply, Inc. assigned various marks, including ROMFH registration 5,712,805 to Assignee, English Riding Supply, LLC of Delaware without specifying which of the 2 above English Riding Supply, LLC Entities, the mark was assigned to, and without informing ROMFH.

21.   A December 31, 2021 Notice of Security Interest [in] U.S. Trademarks signed on behalf of English Riding Supply, LLC, by its referenced "sole manager" English Riding Supply Holdings, LLC, a Delaware Limited Liability Company, granted a security interest in various marks (including the ROMFH mark) to non-party Agents, indicating that English Riding Supply, LLC (not English Riding Supply, Inc.) were the current owners of the marks.  Such notice does not reveal which of the 2 above English Riding Supply, LLC Delaware entities the Romfh mark was assigned to.

**FACTS**

22.   In 1996, Plaintiff, a lifetime horsewoman and California design school graduate, commenced operating the ROMFH equestrian wear brand that she had personally developed as a sole proprietor and first used the ROMFH mark in commerce in association with such equestrian wear.

23.   Since 1996, Plaintiff has worked in the equestrian industry.

24.   On February 17, 1998, Plaintiff registered the ROMFH mark with the USPTO under Reg. No. 2,136,922.

25.   On May 8, 2007, Plaintiff additionally registered the ROMFH mark with the USPTO under Reg. No. 3,239,504.

26.   Beginning in approximately September, 2006 Cyrus Boatwalla of ITR Industries, self-represented as representing ITR Industries, the majority owner of English Riding Supply, solicited Plaintiff's interest in selling her brand to English Riding Supply.

27.   While initial negotiations did not result in a deal, Michael Diamond, Vice

President of English Riding Supply, continued to solicit Plaintiff in 2007 and in 2008, on behalf of English Riding Supply.

28. Plaintiff was not represented by counsel during these discussions and subsequent negotiations of a contract.

29. English Riding Supply, Inc. drafted the contract.

30. Plaintiff, a non-lawyer, understood from the discussions and offers that preceded the 2008 Agreement that in exchange for her grant of both (a) a 50% interest in the brand and her mark to English Riding Supply, Inc., and (b) an exclusive license to use the ROMFH mark globally during the agreement, that Plaintiff would receive (i) not just an initial small cash payment of $12,000, but, (ii) more significantly, English Riding Supply, Inc.'s ongoing payment of a 6% royalty on sales of any goods by it under the ROMFH Mark, and (iii) that English Riding Supply would exploit that exclusive global license by expanding the market for ROMFH globally, allowing Plaintiff to continue to design and develop additional products for use under the ROMFH mark for English Riding Supply, Inc.'s sale worldwide, and enable ROMFH's resultant receipt of growing royalties on worldwide sales.

31. On March 18, 2008, Plaintiff and an entity referring to itself as English Riding Supply, Inc. ("English Riding Supply, Inc."), a purported Pennsylvania corporation, signed a contract following that negotiation, attached as Exhibit A.

32. Plaintiff did not know, at the time of signing the 2008 Agreement that English Riding Supply, Inc. would never expand sales of the brand outside of the United States and Canada.

33. Plaintiff did not know, or understand, that English Riding Supply, Inc. drafted the contract to (a) exclude any express duty of English Riding Supply, Inc. to sell ROMFH goods at any minimum level, or at all, (b) exclude, by both the absence of a minimum royalty obligation, absence of any express duty to sell at minimum levels, and various exclusions from royalty payments, any duty of English Riding Supply, Inc. to pay any minimum royalty to Plaintiff, (c) exclude any duty of ENGLISH RIDING SUPPLY,

INC. to use any ROMFH designs, thus reserving the ability of ENGLISH RIDING SUPPLY, INC. to exclude Plaintiff from any royalties, while still using her exclusively licensed brand worldwide, (d) exclude any term or express right of Plaintiff to ever terminate the agreement, (e) allow English Riding Supply, Inc. to refuse to allow Plaintiff to ever sell her remaining interest without English Riding Supply, Inc.'s approval (which English Riding Supply, Inc. could withhold for any reason, or no reason), all while simultaneously preventing Plaintiff from working in the equestrian clothing field as an employee, contractor, or consultant, even after termination of the agreement.

34.     Subsequent to March, 2008, upon information and belief, English Riding Supply, Inc. assigned its interests in the brand and mark to ERS Equistrian, Inc.

35.     Subsequent to March, 2008, upon information and belief, English Riding Supply, Inc. or ERS Equistrian, Inc. assigned the original English Riding Supply, Inc. interest in the brand and mark to at least one of the English Riding Supply, LLC Entities.

36.     From approximately 2010 – 2018, Plaintiff was employed by English Riding Supply, Inc. as a product designer for both English Riding Supply's in-house brands, as well as the ROMFH brand.

37.     Upon information and belief, Robert Strack was an attorney that was engaged by at least one of the Defendants to, among many other responsibilities, maintain the ROMFH mark of which English Riding Supply, Inc. acquired a 50% interest in the 2008 Agreement.

38.     Following entry into the 2008 Agreement, English Riding Supply, Inc. (and any assignee of English Riding Supply, Inc.'s) assumed a duty to maintain the ROMFH mark, including via counsel Strack, and Plaintiff maintained a duty to cooperate with English Riding Supply, Inc.'s maintenance efforts under the Agreement.

39.     Counsel Strack successfully filed a USPTO Combined Declaration of Use and Incontestability under Sections 8 & 15 on behalf of the ROMFH mark, on July 27, 2012.

40.     However, on December 15, 2017, the ROMFH mark was cancelled before

the USPTO as neither English Riding Supply, Inc., nor counsel Strack, filed a timely declaration of use under Section 8 with the USPTO.

41. Consequently, the ROMFH mark was not registered with the USPTO between December 15, 2017 and April 2, 2019, depriving Plaintiff of the benefits of USPTO registration during that period.

42. On June 21, 2018, counsel Strack filed a new application for ROMFH on behalf of both owners, which was registered by the USPTO on April 2, 2019, registration number 5712805.

43. Commencing in approximately 2018 and through August 31, 2023, English Riding Supply, Inc., and English Riding Supply, LLC employed Plaintiff as an "online marketing designer" for the ROMFH brand.

44. Commencing in approximately September 2020 and continuing through approximately May 2024, Plaintiff resided in Reno, Nevada.

45. Upon information and belief, on December 31, 2021 non-party NCK Capital, LLC ("NCK"), a private equity firm, invested in one or more Defendants, engaging in a majority recapitalization of one or more Defendants, and subsequently controlling management of the ROMFH brand.

46. On December 31, 2021, according to USPTO records, in an Intellectual Property Assignment Agreement, an entity called ERS Equestrian (sic), Inc. f/k/a English Riding Supply, Inc., assigned its rights in various marks, including, purportedly, ROMFH, to English Riding Supply, LLC.

47. Defendants have never supplied Plaintiff with a copy of any assignments to successors-in-interest they ever entered with respect to the Marks, nor have they consulted her before entering the assignments or acquisitions.

48. Prior to a change in management following reorganization arising from the NCK recapitalization, Plaintiff effectively managed the ROMFH brand for English Riding Supply, Inc., working directly with factories to develop colors, fabrics and garments to create a full collection, and, subject to edits made to the line, Plaintiff would

finalize the line.

49.     Plaintiff also started both the ROMFH Facebook account and used her own Instagram account to promote the brand, traveled to key horse shows, training clinics, International Horse Events, Industry Trade shows both in the U.S. and Europe.  She also traveled on many occasions to factories all over the world to scout materials, present and promote the lines, and worked to place buys and re-buys with respect to the ROMFH brand.

50.     Plaintiff had, as of June, 2023, designed a full collection for the Spring 2024 line, which the new management cut to below 30%, resulting in a consequent diminishment of her royalty income.

51.     As of June 24, 2023, the new management - ERS as overseen by NCK Capital, was providing only vague and frenetic direction or cooperation; nonetheless, Plaintiff continued to design the best of her ideas for the  Fall 2024 line.

52.     Subsequent to the recapitalization in approximately July, 2023, English Riding Supply entities hired a new designer/developer of ROMFH products, removing Plaintiff from the design and development process, diminishing the value of the brand, dumping a majority of ROMFH product on discount websites and associating it with lower quality products that consumers were less interested in, thereby diminishing the brand's perceived value and consequently reducing both Plaintiff's compensation and the value of her 50% interest in the ROMFH brand.

53.     Defendants, an exclusive global licensee of the ROMFH brand, have failed to maintain a functioning online sales mechanism for ROMFH products through the www.Romfh.com website, while simultaneously preventing Plaintiff from selling products or competing in any way, and also highly discounting products otherwise.

54.     Defendants, an exclusive global licensee of the ROMFH brand, have failed to exploit the license by selling ROMFH products outside of the United States and Canada.

55.     Defendants failed to timely and fully pay Plaintiff for royalties due under the

2008 Agreement.

56.     Instead of addressing Plaintiff's concerns, Defendants, via NCK's Managing Partner Grant Kornman, with participation of English Riding Supply Entities' CEO Tiss Dahan, attempted to negotiate a buy-out of Plaintiff's 50% interest in July and August 2023, and, after Plaintiff rejected the completely unreasonable offer, English Riding Supply Entities notified Plaintiff that her employment would be terminated August 31, 2023.

57.     English Riding Supply Entities' offer, via NCK, was unacceptable to Plaintiff, and the Defendants rejected her counter-offer on August 14, 2023. The Defendants, via NCK's Grant Kornman, with Tiss Dahan on a copy, notified Plaintiff that her employment would be terminated at the end of August 2023.

58.     Plaintiff was terminated by English Riding Supply Entities effective August 31, 2023.

59.      Plaintiff has been damaged by Defendants' actions in amounts exceeding $75,000, including by the non-payment of earned royalties, reduction in the value of her 50% interest in the brand, and reduction of her royalty earnings by the replacement of Plaintiff as the designer and developer of the brand, and Defendants' unauthorized use of Plaintiff's right of publicity, where, prior to her replacement as designer and developer of the brand, Plaintiff regularly received between $95,000 and $100,000 per year in royalties.

**COUNT ONE**

**FOR DECLARATORY JUDGMENT TO VOID SECTIONS 15 AND 16**

**OF THE 2008 AGREEMENT AS BETWEEN BUSINESSES, FOR AN INJUNCTION,**

**AND FOR DAMAGES, EACH PER CA BUS. & PROF. CODE 16600 et seq.**

**AS AGAINST DEFENDANTS**

60.     Plaintiff repeats and realleges paragraphs 1 through 59 hereof, as if fully set forth herein.

61.     CA Bus. & Prof. Code 16600 provides that, unless excepted by that chapter,

"every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

62.    The 2008 Agreement was entered on March 18, 2008.

63.    Plaintiff was a sole proprietor at the time of entry of the 2008 Agreement.

64.    Sections 15 and 16 of the 2008 Agreement provide, in full:

> *15.    During the term of this Agreement and for one (1) year after its termination, Laura Romfh may not act as a trustee, officer, or consultant for a competitor of ERS. If the Agreement is terminated by ERS this duration shall be reduced to (3) three months.*
>
> *16.    Laura Romfh agrees that during the term of this Agreement, and for a period of one (1) year after its termination, she will not promote, assist in the promotion and/or design, transmit, accept orders or sell any product or goods which are competitive with goods sold by ERS under the MARKS, with the exception of "earth friendly horses"." and "Triathlon clothing".*

65.    The restrictions of Sections 15 and 16 of the 2008 Agreement are not limited geographically.

66.    The non-competition restrictions of Section 15 and 16 of the 2008 Agreement are also not limited temporally, as the 2008 Agreement does not specify any term, nor any procedure by which either party might terminate the Agreement.

67.    Plaintiff was a California resident from 2007 through August, 2020.

68.    From March 18, 2008 through August, 2020, Plaintiff primarily performed her obligations under the March 2008 Agreement from the State of California.

69.    Plaintiff is entitled to a declaratory judgment, pursuant to C.C.P. § 1060 and Bus. & Prof. Code 16600 et seq., that Sections 15 and 16 of the 2008 Agreement are illegal, unenforceable, and void, for injunctive relief preventing enforcement of such clauses, for Plaintiff's damages, and for Plaintiff's recovery of her reasonable attorney's fees and costs pursuant to Bus. & Prof. Code, § 16600.5.

## COUNT TWO

## FOR DECLARATORY JUDGMENT TO VOID SECTIONS 15 AND 16 OF THE 2008 AGREEMENT AS BETWEEN A PROSPECTIVE EMPLOYEE (WHO BECAME AN EMPLOEYE) OF A BUSINESS, FOR AN INJUNCTION, AND FOR DAMAGES, EACH PER CA BUS. & PROF. CODE 16600 et seq. AS AGAINST DEFENDANTS

70.    Plaintiff repeats and realleges paragraphs 1 through 69 hereof, as if fully set forth herein.

71.    The 2008 Agreement was entered on March 18, 2008.

72.    Plaintiff was a California resident from 2007 through August, 2020.

73.    At the time of entry of the March 18, 2008 Agreement, Plaintiff was a prospective employee of English Riding Supply, Inc.

74.    Plaintiff later became an employee of English Riding Supply, Inc.

75.    CA Bus. & Prof. Code 16600.5 provides that "an employer shall not enter into a contract with an employee or prospective employee that includes a provision that is void under this chapter."

76.    By virtue of Plaintiff's status as a prospective employee as of March 18, 2008, Plaintiff is entitled to a declaratory judgment, pursuant to C.C.P. § 1060 and Bus. & Prof. Code 16600 et seq. including CA Bus. & Prof. Code 16600.5, that Sections 15 and 16 of the 2008 Agreement are illegal, unenforceable, and void, for injunctive relief preventing enforcement of such clause, for Plaintiff's damages, and for recovery of Plaintiff's reasonable attorney's fees and costs.

## COUNT THREE

## UNFAIR COMPETITION PER CAL. BUS. & PROF. CODE § 17200 AS AGAINST DEFENDANTS

77.    Plaintiff repeats and realleges paragraphs 1 through 76 hereof, as if fully set forth herein.

78.    Per Bus. & Prof. Code 16600.1, a violation of that section constitutes an act

of unfair competition under Bus. & Prof. Code § 17200.

79.    Defendants have violated Bus. & Prof. Code 16600.1 and therefore committed acts of unfair competition by virtue of inclusion of unlawful non-compete Sections 15 and 16 in the 2008 Agreement.

80.    By reason of the foregoing, Plaintiff is entitled to an injunction against Defendants' enforcement of such clauses, and for restitution including for property interests granted in Plaintiff's ROMFH brand and trademark.

**COUNT FOUR**

**DILUTION BY TARNISHMENT UNDER 15 U.S.C.A. §  1125(C)**

**AS AGAINST DEFENDANTS**

81.    Plaintiff repeats and realleges paragraphs 1 through 80 hereof, as if fully set forth herein.

82.    Plaintiff is a 50% owner of the ROMFH USPTO registration, registration number 5712805, having registered the mark herself, originally, with the USPTO, and having later sold a 50% interest in same USPTO registered Mark to English Riding Supply, Inc. in the 2008 Agreement.

83.    Plaintiff's ROMFH mark is famous throughout the United States as a designation of the source of equestrian apparel.

84.    Defendants have and are continuing to make commercial use in interstate commerce of the ROMFH mark.

85.    Defendants' use occurred after Plaintiff's mark was famous and after entry of the 2008 Agreement.

86.    Defendants' use of Plaintiff's mark in conjunction with lower quality products and sales via discount websites since Defendants retained a replacement designer for Plaintiff has harmed the ROMFH Mark's reputation.

87.    Defendants' use of Plaintiff's mark on lower quality products was willfully intended to harm the reputation of the mark in order to both (a) pressure Plaintiff into entering an untenable proposal of Defendants to purchase Plaintiff's remaining 50%

interest including by simultaneously intentionally diminishing Plaintiff's royalties and preventing Plaintiff from performing any work in her field, indefinitely, and (b) advantage Defendants' other brands, on which brands Defendants were not obliged to pay a 6% royalty to Plaintiff, operating in the same field of equestrian clothing - to the disadvantage of the ROMFH brand.

88.    Plaintiff has suffered damage in the amount of lower actual and future royalties, as well as diminished value of her 50% interest in the Mark, who's sales Plaintiff estimates at over $2.5 million dollars at the time NCK acquired the English Riding Supply entities, with the brand value estimated at $5 million.

89.    Plaintiff seeks an injunction against Defendants' use of the mark with lower quality products pursuant to 15 U.S.C. 1116, and damages for Defendants' willful harm to the reputation of the mark as available under 15 USC 1117 including Defendants' profits, damages to Plaintiff, costs of the action, and Plaintiff's reasonable attorney's fees

## COUNT FIVE

## FOR DECLARATORY JUDGMENT UNDER CAL. BUS. & PROF. CODE § 16722 THAT THE 2008 AGREEMENT IS AN UNLAWFUL RESTRAINT ON TRADE AS AGAINST DEFENDANTS

90.    Plaintiff repeats and realleges paragraphs 1 through 89 hereof, as if fully set forth herein.

91.    The 2008 Agreement imposes a restriction in trade and commerce by simultaneously (a) granting Defendants an exclusive license to exploit the ROMFH mark globally, (b) omitting any express obligation of Defendants to ever sell any amount of ROMFH branded products (or pay any minimum royalty to Plaintiff), (c) barring the eponymous co-owner and founder of the brand, Plaintiff, from working in the field of equestrian apparel throughout the world at any time during the contract, and forever, given the lack of a contractual term and the absence of any termination without cause provision, and (d) preventing Plaintiff from selling off her 50% interest in the brand without Defendants' approval which can be withheld for any reason or no reason.

92.    Defendants maintain other equestrian supply brands (including, but not limited to Mountain Horse USA, Ovation, Catago, and its own English Riding Supply brand) that compete with the ROMFH brand.

93.    Such combination of restraints on trade, in combination with Defendants' competitive position in the equestrian apparel marketplace, collectively act to suppress competition within the equestrian apparel marketplace, against the fundamental public policy of the State of California.

94.    Consequently, pursuant to Cal. Prof. Code § 16722 the 2008 Agreement is void, and the Court should provide restitution to Plaintiff of her 50% interest in the mark and brand (and any IP created thereunder), and void any other obligations of the Parties, to each other, arising from the 2008 Agreement going forward, and require Defendants' to return to Plaintiff's possession and control any goods created under the Mark, and enter an injunction prohibiting Defendants' continued use of the Mark.

**COUNT SIX**

**ACTUAL AND CONSTRUCTIVE FRAUD UNDER CAL.CIV.CODE § 1572 AND § 1573**

**AS AGAINST DEFENDANTS**

95.    Plaintiff repeats and realleges paragraphs 1 through 94 hereof, as if fully set forth herein.

96.    Defendant English Riding Supply, Inc. drafted the 2008 Agreement.

97.    Defendant English Riding Supply, Inc. mislead, intentionally deceived, and concealed material facts from Plaintiff to lead Plaintiff to believe that she would receive a set percentage royalty on sales of ROMFH branded products when, during exchanges between Plaintiff, Cyrus Boatwalla and Michael Diamond (who were acting on behalf of Defendant English Riding Supply, Inc.'s) that occurred between 2006 and 2008 such percentages were offered, but then, when English Riding Supply, Inc. proposed the 2008 Agreement it included additional language, that (a) only allowed Plaintiff to receive royalties on goods that she exclusively designed and developed, (b) did not require the ERS entities to sell any goods or services that she had designed, and (c) added exceptions

to royalty payment scenarios not discussed with Plaintiff during negotiations.

98.    Royalties were a material consideration for ROMFH's entry into the 2008 Agreement and English Riding Supply, Inc. knew its acts were misleading or deceiving to Plaintiff, knew Plaintiff as a sole proprietor without counsel was relying upon their representations, Plaintiff justifiably relied on the misrepresentation, and Plaintiff's injury in the form of entry into an agreement that she otherwise would not have entered, and lost royalties, were proximately caused by this reliance.

99.    English Riding Supply, Inc., as a party entering a mutual venture where Plaintiff and it would share in the mutual success of the ROMFH brand, had a duty to Plaintiff to not mislead or deceive her in this manner.

100.   For the foregoing, Plaintiff is entitled to restitution of the 50% interest in the ROMFH brand and marks conveyed by the 2008 Agreement, for the 2008 Agreement to be voided, and actual and compensatory damages.

## COUNT SEVEN

### AS AGAINST DEFENDANTS

**FOR DECLARATORY JUDGMENT THAT THE CONTRACT IS TERMINATED FOR FRUSTRATION OF PURPOSE AND FOR RESTIUTION**

101.   Plaintiff repeats and realleges paragraphs 1 through 100 hereof, as if fully set forth herein.

102.   The purpose of the 2008 Agreement from Plaintiff's perspective was to expand, globally, the geographic reach and profitability of Plaintiff's equestrian apparel designs sold under her eponymous ROMFH brand and thereby enable greater returns to Plaintiff as she continued to design and develop for the brand to expand its reach and market share.

103.   The purpose of the 2008 Agreement has been substantially frustrated as, even after 16 years from its inception, Defendants have not expanded sales globally, instead only engaging in US and Canadian sales, Defendants have failed to maintain a direct online sales platform for the brand, and Defendants have excluded Plaintiff from the

design and development process thereby wholly prohibiting compensation in the future for any new product lines and thereby wholly prohibiting her from working on behalf of her eponymous brand.

104. For the foregoing, Plaintiff seeks rescission of the 50% grant and exclusive license therein, for rescission of the non-compete provisions therein, for rescission of the right of first refusal provision therein, for restitution of her 50% interest in the ROMFH Mark, for elimination of any obligations of Plaintiff to Defendants with respect to the ROMFH Marks or the Brand, for Plaintiff's retention of 100% interest in any trade dress or other Intellectual Property created by Plaintiff during the 2008 Agreement, for elimination of any duties of Plaintiff to English Riding Supply, Inc. under the 2008 Agreement other than paragraph 4 pertaining to indemnity for claims arising from the ROMFH Mark prior to the Agreement, for the elimination of any rights of Defendants under the 2008 Agreement, for Defendants duty timely pay any royalties on products sold under the Mark prior to the date of the Court's order, for cessation of any use of the mark or other sales by English Riding Supply, Inc. after the date of the Court's order, and for return of control of all ROMFH branded social media to Plaintiff.

**COUNT EIGHT**

**FOR A DECLARATORY JUDGMENT THAT THE 2008 AGREEMENT IS VOID AB INITIO AS AGAINST DEFENDANTS**

105. Plaintiff repeats and realleges paragraphs 1 through 104 hereof, as if fully set forth herein.

106. The two parties to the 2008 Agreement are Plaintiff and English Riding Supply, Inc., listed as a Pennsylvania Corporation in the Agreement.

107. The Pennsylvania Secretary of State does not reveal the existence of any Pennsylvania Corporation ever called English Riding Supply, Inc.

108. Upon information and belief, no entity ever named English Riding Supply, Inc. was ever registered in the State of Pennsylvania.

109. The existence of a counter-party English Riding Supply, Inc., and the grant

of 50% rights in the Plaintiff's eponymous mark to that specific entity, was essential subject matter of the 2008 Agreement.

110.   Upon information and belief, such subject matter was non-existent, as no Pennsylvania entity named English Riding Supply, Inc. existed as of March 18, 2008.

111.   Consequently, the 2008 Agreement should be deemed void ab initio.

112.   By reason of the foregoing, Plaintiff seeks a declaratory judgment that the 2008 Agreement is void ab initio, and as a result, restitution to Plaintiff of her 50% interest in the brand, and elimination of any rights of Defendants or any of their assignees under the contract, and elimination of any obligations of Plaintiff under the contract, prohibition of any future use of Defendants (or any assignees) of the ROMFH Mark, and a requirement that Defendants pay Plaintiff, within thirty (30) days, all outstanding royalties owed to Plaintiff for any qualifying sales made for which royalties have not yet been paid.

## COUNT NINE

### FOR BREACH OF CONTRACT FOR FAILING TO ACCURATELY AND TIMELY PAY AMOUNTS DUE UNDER THE CONTRACT

113.   Plaintiff repeats and realleges paragraphs 1 through 112 hereof, as if fully set forth herein.

114.   Paragraphs 10 -13 of the 2008 Agreement require English Riding Supply, Inc. to pay Plaintiff 6% of the ERS Dealer "Q Price" upon qualifying goods sold under the ROMFH Mark within thirty (30) days from the end of each calendar quarter.

115.   Defendants have breached the 2008 Agreement by failing to timely and fully pay Plaintiff 6% of the ERS Dealer "Q Price" upon all qualifying sales of goods under the Marks.

116.   For the foregoing Plaintiff has been deprived of earned royalties and is entitled to compensatory damages, interest, and consequential damages arising from such breach.

///

## COUNT TEN

### FOR BREACH OF CONTRACT BY NECESSARY IMPLICATION

117.   Plaintiff repeats and realleges paragraphs 1 through 116 hereof, as if fully set forth herein.

118.   Paragraphs 10 -13 of the 2008 Agreement requires English Riding Supply, Inc. to pay Plaintiff 6% of the ERS Dealer "Q Price" upon goods that Plaintiff designed and developed exclusively under the Marks.

119.   Paragraph 9 of the 2008 Agreement requires Plaintiff to develop 2 lines per year.

120.   In violation of the duty of good faith and fair dealing, and consequently by failing to fulfill an obligation necessarily implied under Pennsylvania law, beginning on or about July, 2023, Defendants informed Plaintiff that she was being replaced as a designer on or about July 2023, without terminating the 2008 Agreement, and, Defendants hired a replacement individual to design and develop for the ROMFH brand in place of Plaintiff (eliminating Plaintiff's ability to earn royalties on her brand's products as the agreement only afforded her royalties on products she designed) which replacement's efforts have diminished the brands sales and reputation generally, to the benefit of the other competing brands that Defendants own.

121.   Defendants further obstructed Plaintiff from fulfilling her right under the 2008 Agreement to design and develop new product lines for the ROMFH brand and collaborating with manufacturers and vendors, and have thereby failed to consider and produce her designs, and thereby prevented her from receiving a royalty on sales of new product lines, Plaintiff's primary consideration under the Agreement.

122.   Plaintiff's status as an ongoing designer of her eponymous brand during the Agreement is, by necessary implication, an essential element of the 2008 Agreement.

123.   Moreover, in a failure of diligence, in violation of the duty of good faith and fair dealing, and also by failing to fulfill an obligation necessarily implied under Pennsylvania law, Defendants have, as exclusive licensee of the ROMFH brand, failed,

as of October, 9, 2024, to maintain a functioning online sales mechanism through the www.Romfh.com website.

124.   Furthermore, in an additional failure of diligence, in violation of the duty of good faith and fair dealing under Pennsylvania law, and also to fulfill an obligation necessarily implied under Pennsylvania law, Defendants have failed to exploit Defendants' exclusive worldwide license of the ROMFH Mark throughout the world, limiting sales to the United States and Canada.

125.   Finally, Defendants additionally failed, via their retained counsel, to maintain the ROMFH trademark by timely filing a Section 8 declaration with the USPTO, resulting in the cancellation of the Mark from December 15, 2017 and the parties' procession without a registered mark until a new ROMFH mark was registered by the same counsel on April 2, 2019, where such counsel was the counsel designated by the parties as its agent before the USPTO, was solely engaged and controlled by Defendants, not Plaintiff, and where Defendants represented to Plaintiff that they would handle trademark maintenance under the 2008 Agreement.

126. Plaintiff has been harmed by Defendants' breaches, including, without limitation, by virtue of years of lost future royalties on goods arising from designs she was prevented from participating in, lost royalties and interest thereon arising from sales that have not occurred outside the United States and Canada since 2008, lost royalties and interest thereon from failure to consistently make sales available online through www.Romfh.com, interest and lost royalties from late or unpaid royalties, and diminished goodwill and reputation of the ROMFH brand by virtue of Defendants' failure to adequately maintain the mark, resulting in loss of statutory benefits and presumptions arising from federal registration.

127. For the foregoing Plaintiff has been deprived of earned royalties, her eponymous brand, of which she owns 50%, has been diminished in value and goodwill, and she is entitled to compensatory damages, interest, loss of goodwill, reputational harm, lost profits, and diminution of value, and consequential damages arising from such

breach.

## DEMAND FOR RELIEF

WHEREFORE, PLAINTIFF requests judgment as follows:

A.   declaratory judgment,

B.   injunctive relief including rescission of the 2008 Agreement,

C.    restitution,

D.   compensatory damages,

E.   consequential damages (including, without limitation, for reputational harm, loss of goodwill, diminution of value, and lost profits),

F.   Defendants' profits,

G.   Plaintiff's reasonable attorney's fees and costs,

H.   Pre-judgment and post-judgment interest, and

I.   Granting Plaintiff such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury.

Dated: March 13, 2025                Respectfully submitted,

Katie Charleston Law, PC


By:   /s/ *Katie Charleston*

Katie Charleston, Esq.

Attorney for Plaintiff

---

**PLAINTIFF'S COMPLAINT**

23

## VERIFICATION

I am the Plaintiff in this action. I have read the foregoing Complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: Mar 12, 2025 _____

_____
Laura Corsi (Mar 12, 2025 09:01 CDT)

Laura F. Corsi

Plaintiff

---

**PLAINTIFF'S COMPLAINT**

24