Katie M. Charleston (SBN 252422)
Katie Charleston Law, PC
1905 S. New Market St., Ste. 169
Carmel, IN 46032
PH: 317-663-9190
Fax: 317-279-6258
Email: katie@katiecharlestonlaw.com

Attorney for Plaintiff, Laura F. Corsi (a/k/a Laura F. Romfh)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Laura F. Corsi, (a/k/a Laura F. Romfh),<br><br>Plaintiff,<br><br>vs.<br><br>English Riding Supply, Inc., ERS Equistrian, Inc., English Riding Supply, LLC, a Delaware Limited Liability Company (No. 3563640), English Riding Supply, LLC, a Pennsylvania Limited Liability Company (No. 3092814), English Riding Supply, LLC, a Delaware Limited Liability Company (6413166), English Riding Supply, LLC, a Pennsylvania Limited Liability Company (7425042), English Riding Supply Holdings (64131080), a Delaware Limited Liability Company, and NCK Capital, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No.: 2:25-cv-02238-DMG-KES<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
1

Plaintiff, by and through her attorneys, Katie Charleston Law, PC, for her First Amended Complaint ("FAC") against Defendants, alleges, on knowledge as to her own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This action arises from the March 18, 2008 Agreement (the "2008 Agreement") under which Defendants—a purchasing corporation (and its subsequent related entities now controlled by private equity) that drafted a one-sided contract— acquired fifty percent (50%) of Plaintiff's trademark rights and obtained an exclusive worldwide license to use the ROMFH mark. Plaintiff, an individual sole proprietor and lifelong equestrian apparel designer who later became Defendants' employee, was unrepresented by counsel when presented with the 2008 Agreement. Defendants inserted unconscionable terms that (a) bar Plaintiff, as the brand's founder, from working anywhere in the world in the equestrian apparel field during and after the Agreement's term; (b) prohibit Plaintiff from selling her remaining fifty percent (50%) equity interest unless Defendants consent, with no limitation on Defendants' right to withhold consent; and (c) require Defendants to pay Plaintiff royalties only on product lines she designs, while imposing no obligation ever to manufacture or sell any of her designs (and therefore no guaranteed minimum royalties), all in exchange for a one-time payment of twelve thousand dollars ($12,000) and royalties only on whichever exclusive designs Defendants actually choose to produce. Defendants have already supplanted Plaintiff by hiring a new designer and have withheld or underpaid the royalties that are due.

2. Plaintiff seeks declaratory relief, injunctive relief, and damages exceeding seventy-five thousand dollars ($75,000), including, without limitation, restitution, incidental, consequential, compensatory, treble and general damages; disgorgement of Defendants' profits; Plaintiff's reasonable attorneys' fees and costs; and pre- and post-judgment interest.

//

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the State of Tennessee and citizens of the States of Pennsylvania, Delaware and Texas and the amount in controversy exceeds $75,000, exclusive of interest and costs. Furthermore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 15 U.S.C.A. § 1125(a).

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically:

a) Plaintiff was a resident of Long Beach, California, within this district, at the time the 2008 Agreement was executed and for the majority of the time that Defendants' wrongful acts occurred;

b) Defendants imposed restrictive non-compete covenants on Plaintiff while she was a California resident, violating California's strong public policy against non-compete agreements under Cal. Bus. & Prof. Code § 16600; and

c) Plaintiff performed significant contractual obligations under the 2008 Agreement from California, including designing and developing equestrian products;

## PARTIES

5. Plaintiff is an individual who currently resides in Lawrence County, Tennessee, is a citizen of the State of Tennessee, and has been a Tennessee resident since June, 2024, but was a resident and citizen of California during relevant times, including from 2008-2020.

6. English Riding Supply, LLC, file number 3563640, is a registered Delaware limited liability company. Upon information and belief this entity has a principal place of business in Pennsylvania.

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

3

7. English Riding Supply, LLC, file No. 3092814, is a registered foreign limited liability company in Pennsylvania. Upon information and belief this entity has a principal place of business in Pennsylvania.

8. English Riding Supply, LLC, file No. 7425042, is a foreign limited liability company in Pennsylvania; upon information and belief, that entity maintains its principal place of business in Pennsylvania.

9. English Riding Supply, LLC, file No. 6413166, is a registered Delaware limited liability company; upon information and belief, it likewise maintains its principal place of business in Pennsylvania.

10. English Riding Supply Holdings, LLC, file No. 64131080, is a registered Delaware Limited Liability Company; upon information and belief, it likewise maintains its principal place of business in Pennsylvania.

11. ERS Equistrian (sic) Inc. is a registered Delaware corporation. Upon information and belief this entity has a principal place of business in Pennsylvania.

12. The Pennsylvania Secretary of State does not reveal the registration of any corporation by the name of English Riding Supply, Inc. Upon information and belief, this entity is or was a sole proprietorship.

13. A December 31, 2021, Trademark Assignment with the USPTO filed by English Riding Supply, Inc.'s counsel states that English Riding Supply, Inc. is a Delaware corporation, not a Pennsylvania corporation.

14. The Delaware Secretary of State also does not reveal the registration of any corporation by the name of English Riding Supply, Inc.

15. NCK Capital, LLC, is a private equity firm registered as a limited liability company in the state of Texas.

## FACTS

16. Plaintiff began riding horses when she was approximately two years old, taking lessons at various equestrian clubs and participating in dressage shows and events throughout the Pacific Northwest. After completing high school, she attended Parsons

School of Design in Los Angeles, where she combined her lifelong passion for riding with formal fashion design training.

17.     At age twenty-six, in 1997, Plaintiff launched her eponymous ROMFH equestrian apparel brand as a sole proprietor, re-inventing women's riding clothing with innovative fits and enhanced airflow.  Following her designs' feature in Dover Saddlery, the ROMFH brand rapidly gained market traction.

18.     Plaintiff, along with three partners, formally commenced operating ROMFH under the ROMFH mark in commerce as a limited liability company until 1998 when she bought out her partners and continued operating as a sole proprietor.  She has worked continuously in the equestrian industry since.  On February 17, 1998, Plaintiff registered the ROMFH mark with the USPTO (Reg. No. 2,136,922), and on May 8, 2007, she obtained a second federal registration for ROMFH (Reg. No. 3,239,504).

19.     In approximately September 2006, Cyrus Boatwalla of ITR Industries—self-described as representing ITR Industries, the majority owner of English Riding Supply—solicited Plaintiff's interest in selling her ROMFH brand to English Riding Supply.  Although those initial discussions did not immediately result in a transaction, Michael Diamond, Vice President of English Riding Supply, renewed the solicitation in 2007 and again in early 2008.

20.     During these negotiations, Plaintiff, who was not represented by counsel, understood that in exchange for her assigning (a) a fifty percent (50%) ownership interest in the ROMFH brand and underlying trademark to English Riding Supply, Inc. and (b) an exclusive global license to use the ROMFH mark, she would receive (i) a one-time cash payment of $12,000, (ii) a six percent (6%) ongoing royalty on all goods sold under the ROMFH mark, and (iii) the opportunity to continue designing and developing new ROMFH product lines for worldwide sale.

21.     On March 18, 2008, Plaintiff and an entity styling itself "English Riding Supply, Inc." (described in the 2008 Agreement as "a corporation organized under the laws of the Commonwealth of Pennsylvania" with a principal place of business in

Scranton, Pennsylvania) executed a written contract (the "2008 Agreement," attached hereto as Exhibit A).

22.    At signing, Plaintiff was a resident of Long Beach, California.

23.    Under the 2008 Agreement, English Riding Supply, Inc. acquired a fifty percent (50%) ownership interest in the ROMFH brand and an exclusive worldwide license to use the ROMFH mark for the Agreement's term.

24.    The Agreement expressly required English Riding Supply, Inc. to pay Plaintiff a six percent (6%) royalty on the "ERS Dealer Q Price" for any goods sold under the ROMFH mark, and obligated Plaintiff to develop two new product lines per year for ROMFH.

25.    Plaintiff did not know—and could not have reasonably foreseen—that (a) English Riding Supply, Inc. had drafted the Agreement without any minimum-sales requirement or guaranteed minimum royalties, (b) English Riding Supply, Inc. reserved unilateral discretion not to produce any of Plaintiff's designs (thus potentially denying her all royalties), (c) Plaintiff had no express contractual right to terminate the Agreement on her own, (d) English Riding Supply, Inc. retained the right to prohibit Plaintiff from working in the equestrian apparel industry after termination without English Riding Supply, Inc.'s (or its successor's) approval, and (e) English Riding Supply, Inc. was not a registered corporation, as represented.

26.    After March 2008—and upon information and belief—English Riding Supply, Inc. assigned its fifty percent (50%) ownership interest in the ROMFH brand and underlying trademark to ERS Equestrian, Inc.  Thereafter, either English Riding Supply, Inc. or ERS Equestrian, Inc. further assigned that interest to at least one of the English Riding Supply, LLC entities (File No. 3563640 or File No. 3092814).  Defendants never provided Plaintiff with any copies of those assignments or sought her input before entering them.

27.    From 2010 through 2023, Plaintiff was employed by one or more Defendant entities operating under the name "English Riding Supply." While working for those

entities, Plaintiff served as a product designer, contributing both to the companies' in-house brands and to the ROMFH brand.

28. Defendants retained attorney Robert Strack to maintain the ROMFH trademark following entry of the 2008 Agreement. In keeping with the contractual obligation, counsel Strack filed a Combined Declaration of Use and Incontestability under Sections 8 and 15 for the ROMFH mark on July 27, 2012 (Reg. No. 3,239,504). However, years later—on December 15, 2017—the USPTO canceled the ROMFH registration because neither English Riding Supply, Inc. (or its successors) nor counsel Strack had timely filed a Section 8 Declaration of Use. Consequently, from December 15, 2017, until April 2, 2019, the ROMFH mark lacked federal registration, depriving Plaintiff of the benefits of incontestability and other statutory protections, another fact concealed from Plaintiff.

29. On June 21, 2018, counsel Strack filed a new trademark application for ROMFH on behalf of "English Riding Supply" (a Delaware corporation, not "English Riding Supply, Inc." or any LLC). The USPTO granted that new registration on April 2, 2019 (Reg. No. 5,712,805).

30. On December 27, 2011, an entity named English Riding Supply, LLC (File No. 7425042) was registered as a foreign limited liability company in Pennsylvania; upon information and belief, that entity maintains its principal place of business in Pennsylvania. On November 22, 2021, a later-formed entity also named English Riding Supply, LLC (File No. 6413166) was registered as a domestic Delaware limited liability company; upon information and belief, it likewise maintains its principal place of business in Pennsylvania. Combined, there are four English Riding Supply, LLC entities ("ERS LLC Defendants.")

31. On or about December 31, 2021, non-party NCK Capital, LLC ("NCK") (a private equity firm organized under Delaware law) completed a majority recapitalization of one or more of the "ERS Entities" (hereafter defined to include English Riding Supply, Inc.; ERS Equestrian, Inc.; and any English Riding Supply, LLC). Through that

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

recapitalization, NCK gained control of the ROMFH brand's management.

32.    Also on December 31, 2021, ERS Equestrian, Inc. (f/k/a English Riding Supply, Inc.) executed an Intellectual Property Assignment Agreement assigning multiple trademark registrations—including Reg. No. 5,712,805 for ROMFH—to "English Riding Supply, LLC of Delaware," without specifying whether the assignee was File No. 3563640 or File No. 6413166.  Neither Plaintiff nor the ROMFH brand was informed which Delaware LLC became the assignee.

33.    That same day, a "Notice of Security Interest in U.S. Trademarks" was signed by English Riding Supply Holdings, LLC (a Delaware limited liability company acting as sole manager of English Riding Supply, LLC) on behalf of English Riding Supply, LLC. The Notice granted a security interest in various marks (including the ROMFH mark) to certain non-party Agents and indicated that "English Riding Supply, LLC" (and not English Riding Supply, Inc.) was then the current owner of those marks.  The Notice did not identify which of the two Delaware LLC entities (File No. 3563640 or 6413166) held the ROMFH registration.

34.    Between 2018 and August 31, 2023, Plaintiff was employed by English Riding Supply, Inc. and English Riding Supply, LLC as an "online marketing designer" for the ROMFH brand.

35.    From September 2020 through May 2024, Plaintiff resided in Reno, Nevada, and performed her design and marketing duties remotely.

36.    Prior to the NCK recapitalization, Plaintiff effectively managed the ROMFH brand on behalf of English Riding Supply, Inc. and its successors: she worked directly with factories worldwide to scout materials, select colors and fabrics, and oversee garment production; she finalized each seasonal collection subject to Defendants' editorial feedback; she launched and maintained the ROMFH social media presence (including Facebook and Instagram); she traveled to key horse shows, training clinics, and international equestrian events in both the United States and Europe to promote ROMFH; and she coordinated initial production runs and reorders.

37.     In June 2023, Plaintiff completed a full design collection for Spring 2024. However, on or about June 24, 2023, new management under ERS LLC (overseen by NCK) cut Plaintiff's Spring 2024 collection to less than thirty percent of her designs, dramatically reducing her expected royalty income.  Thereafter, despite providing only vague and inconsistent direction, Plaintiff continued to develop her best ideas for the Fall 2024 line until she was excluded from the process.

38.     In approximately July 2023—shortly after the NCK recapitalization—Defendants hired a new designer/developer for ROMFH products, removing Plaintiff entirely from design and development.  As a result, Defendants began discounting copious quantities of ROMFH product on secondary websites and associating the brand with lower-quality inventory.  This conduct diminished ROMFH's perceived value, reduced Plaintiff's annual royalty earnings (which had previously ranged between $95,000 and $100,000), and caused a significant decline in the market value of her fifty percent (50%) equity interest in the ROMFH brand.

39.     On August 14, 2023, Defendants—through NCK's Managing Partner, Grant Kornman (with English Riding Supply's CEO, Tiss Dahan, copied)—presented Plaintiff with an offer to buy out her fifty percent (50%) ownership interest in ROMFH.  Plaintiff rejected the offer as unreasonable.  Defendants then notified Plaintiff that her employment would terminate effective August 31, 2023, thereby precluding her from any further role in ROMFH's design, marketing, or management.

40.     To date, Defendants, as the exclusive global licensee of the ROMFH brand, have failed to maintain a functioning online sales platform for ROMFH products (www.Romfh.com), while simultaneously preventing Plaintiff from selling or otherwise competing.  They have also restricted ROMFH sales to the United States and Canada despite holding an exclusive worldwide license.

41.     Defendants have repeatedly failed to pay Plaintiff timely and complete royalties as required by the 2008 Agreement.  Before her removal as ROMFH's designer, Plaintiff consistently earned between $95,000 and $100,000 per year in royalties;

Defendants' post-recapitalization actions caused her royalty income to plunge.

42.    Defendants have never provided Plaintiff with copies of any assignments, security interests, or corporate reorganizations affecting the ROMFH mark or Plaintiff's fifty percent (50%) ownership interest.  Their failure to disclose these transactions has obscured the chain of title and Plaintiff's contractual rights.

43.    Despite Defendants' replacement of Plaintiff as designer in July 2023, Defendants continued to market and sell every ROMFH-branded product under the "ROMFH" mark—and under Plaintiff's own surname—on product labels, packaging, catalogs, social media posts, and promotional materials, including on the ROMFH Facebook and Instagram accounts that Plaintiff had established. This ongoing use falsely implies that Plaintiff designed or endorsed those collections, even though she was entirely excluded from the design, development, and approval processes after July 2023.

44.    As a direct and proximate result of Defendants' actions—including removing Plaintiff from design responsibilities, failing to maintain the trademark registration, limiting sales territories, discounting inventory, nonpayment of royalties, and diluting the brand—Plaintiff has suffered and continues to suffer monetary damages exceeding $75,000.  These damages include lost royalties from the Spring 2024 and Fall 2024 collections; lost future royalties on worldwide sales; lost royalties from e-commerce sales; diminution in market value of her fifty percent (50%) equity interest in ROMFH; lost benefits of the ROMFH mark's federal registration (including incontestability) between December 15, 2017, and April 2, 2019; and reputational harm to both Plaintiff and the ROMFH brand.

//

## COUNT ONE

## FOR DECLARATORY JUDGMENT TO VOID SECTIONS 15 AND 16

## OF THE 2008 AGREEMENT AS BETWEEN BUSINESSES, FOR AN INJUNCTION,

## AND FOR DAMAGES, EACH PER CA BUS. & PROF. CODE 16600 et seq.

(*As against English Riding Supply, Inc., ERS Equestrian, Inc., and ERS, LLC Defendants*)

45.    Plaintiff repeats and realleges paragraphs 1 through 44 hereof, as if fully set forth herein.

46.    CA Bus. & Prof. Code 16600 provides that, unless excepted by that chapter, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

47.    The 2008 Agreement was entered on March 18, 2008.

48.    Plaintiff was a sole proprietor at the time of entry of the 2008 Agreement.

49.    Sections 15 and 16 of the 2008 Agreement provide, in full:

15.    *During the term of this Agreement and for one (1) year after its termination, Laura Romfh may not act as a trustee, officer, or consultant for a competitor of ERS. If the Agreement is terminated by ERS this duration shall be reduced to (3) three months.*

16.    *Laura Romfh agrees that during the term of this Agreement, and for a period of one (1) year after its termination, she will not promote, assist in the promotion and/or design, transmit, accept orders or sell any product or goods which are competitive with goods sold by ERS under the MARKS, with the exception of "earth friendly horses"." and "Triathlon clothing".*

50.    The restrictions of Sections 15 and 16 of the 2008 Agreement are not limited geographically.

51.    The non-competition restrictions of Section 15 and 16 of the 2008 Agreement are also not limited temporally, as the 2008 Agreement does not specify any term, nor

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

11

any procedure by which either party might terminate the Agreement.

52.    Plaintiff was a California resident from 2007 through August, 2020.

53.    From March 18, 2008, through August, 2020, Plaintiff primarily performed her obligations under the March 2008 Agreement from the State of California.

54.    Plaintiff is entitled to a declaratory judgment, pursuant to C.C.P. § 1060 and Bus. & Prof. Code 16600 et seq., that Sections 15 and 16 of the 2008 Agreement are illegal, unenforceable, and void, for injunctive relief preventing enforcement of such clauses, for Plaintiff's damages, and for Plaintiff's recovery of her reasonable attorney's fees and costs pursuant to Bus. & Prof. Code, § 16600.5.

## COUNT TWO

### FOR DECLARATORY JUDGMENT TO VOID SECTIONS 15 AND 16 OF THE 2008 AGREEMENT AS BETWEEN A PROSPECTIVE EMPLOYEE (WHO BECAME AN EMPLOEYE) OF A BUSINESS, FOR AN INJUNCTION, AND FOR DAMAGES, EACH PER CA BUS. & PROF. CODE 16600 et seq.

(*As against English Riding Supply, Inc., ERS Equestrian, Inc., and ERS, LLC Defendants*)

55.    Plaintiff repeats and realleges paragraphs 1 through 54 hereof, as if fully set forth herein.

56.    The 2008 Agreement was entered on March 18, 2008.

57.    Plaintiff was a California resident from 2007 through August, 2020.

58.    At the time of entry of the March 18, 2008 Agreement, Plaintiff was a prospective employee of English Riding Supply, Inc.

59.    Plaintiff later became an employee of English Riding Supply, Inc.

60.    CA Bus. & Prof. Code 16600.5 provides that "an employer shall not enter into a contract with an employee or prospective employee that includes a provision that is void under this chapter."

61.    By virtue of Plaintiff's status as a prospective employee as of March 18, 2008, Plaintiff is entitled to a declaratory judgment, pursuant to C.C.P. § 1060 and Bus.

& Prof. Code 16600 et seq. including CA Bus. & Prof. Code 16600.5, that Sections 15 and 16 of the 2008 Agreement are illegal, unenforceable, and void, for injunctive relief preventing enforcement of such clause, for Plaintiff's damages, and for recovery of Plaintiff's reasonable attorney's fees and costs.

## COUNT THREE

## FOR DECLARATORY JUDGMENT UNDER CAL. BUS. & PROF. CODE § 16722 THAT THE 2008 AGREEMENT IS AN UNLAWFUL RESTRAINT ON TRADE

(*As against English Riding Supply, Inc., ERS Equistrian, Inc., and ERS, LLC Defendants*)

62.     Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

63.     The 2008 Agreement imposes a restriction in trade and commerce by simultaneously (a) granting Defendants an exclusive license to exploit the ROMFH mark globally, (b) omitting any express obligation of Defendants to ever sell any amount of ROMFH branded products (or pay any minimum royalty to Plaintiff), (c) barring the eponymous co-owner and founder of the brand, Plaintiff, from working in the field of equestrian apparel throughout the world at any time during the contract, and forever, given the lack of a contractual term and the absence of any termination without cause provision, and (d) preventing Plaintiff from selling off her 50% interest in the brand without Defendants' approval which can be withheld for any reason or no reason.

64.     Defendants maintain other equestrian supply brands (including, but not limited to Mountain Horse USA, Ovation, Catago, and its own English Riding Supply brand) that compete with the ROMFH brand.

65.     Such combination of restraints on trade, in combination with Defendants' competitive position in the equestrian apparel marketplace, collectively act to suppress competition within the equestrian apparel marketplace, against the fundamental public policy of the State of California.

66.     Consequently, pursuant to Cal. Prof. Code § 16722 the 2008 Agreement is void, and the Court should provide restitution to Plaintiff of her 50% interest in the mark

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

13

and brand (and any IP created thereunder), and void any other obligations of the Parties, to each other, arising from the 2008 Agreement going forward, and require Defendants' to return to Plaintiff's possession and control any goods created under the Mark, and enter an injunction prohibiting Defendants' continued use of the Mark.

## COUNT FOUR

## ACTUAL AND CONSTRUCTIVE FRAUD IN THE INDUCEMENT

## UNDER CAL.CIV.CODE § 1572 AND § 1573

(*As against English Riding Supply, Inc., ERS Equestrian, Inc., and ERS, LLC Defendants*)

67.     Plaintiff repeats and realleges paragraphs 1 through 66 hereof, as if fully set forth herein.

68.     During negotiations leading up to March 18, 2008, representatives of English Riding Supply, Inc.—including Cyrus Boatwalla and Michael Diamond—expressly told Plaintiff that she would receive a six percent (6%) royalty "on all goods sold under the ROMFH mark."

69.     Unknown to Plaintiff at the time, the final 2008 Agreement as drafted by English Riding Supply, Inc. limited her royalty to "products she exclusively designs," and imposed carve-outs permitting Defendants to sell none of her designs.

70.     Plaintiff did not discover—or could not reasonably have discovered—this discrepancy until July 2023, when Defendants (a) replaced her as ROMFH's designer and (b) began underpaying or withholding royalties entirely on the Spring 2024 collection.

71.     At no earlier date did Plaintiff have reason to suspect that the Defendants' oral assurances conflicted with the written Agreement; she reasonably relied on those assurances when signing in 2008.

72.     By failing to disclose the true royalty terms and by drafting the final 2008 Agreement to contradict the pre-contract discussions, Defendants (a) knowingly concealed material facts, (b) intended Plaintiff to rely on the misrepresentations, and (c) induced her to sign under false pretenses.

73.     As a direct and proximate result of Defendants' fraud, Plaintiff suffered

damages—most notably the loss of hundreds of thousands of dollars in royalties that she would have received under the promised 6%-on-all-sales structure.

74. Because Plaintiff's discovery of the fraud occurred in July 2023 (within three years of this filing), this claim is timely under Calif. Civ. Proc. Code § 338(d).

75. Even if the elements of actual fraud were not met earlier, Defendants' status as co-owners created a fiduciary relationship. By omitting material terms from Plaintiff, they also committed constructive fraud under Cal. Civ. Code § 1573. Plaintiff relied to her detriment, and thus is entitled to damages.

76. For the foregoing, Plaintiff is entitled to restitution of the 50% interest in the ROMFH brand and marks conveyed by the 2008 Agreement, for the 2008 Agreement to be voided, and actual and compensatory damages.

## COUNT FIVE

## FOR A DECLARATORY JUDGMENT THAT THE 2008 AGREEMENT IS VOID AB INITIO

(*As against English Riding Supply, Inc.*)

77. Plaintiff repeats and realleges paragraphs 1 through 76 hereof, as if fully set forth herein.

78. The two parties to the 2008 Agreement are Plaintiff and English Riding Supply, Inc., listed as a Pennsylvania Corporation in the Agreement.

79. The Pennsylvania Secretary of State does not reveal the existence of any Pennsylvania Corporation ever called English Riding Supply, Inc.

80. Upon information and belief, no entity ever named English Riding Supply, Inc. was ever registered in the State of Pennsylvania.

81. The existence of a counter-party English Riding Supply, Inc., and the grant of 50% rights in the Plaintiff's eponymous mark to that specific entity, was essential subject matter of the 2008 Agreement.

82. Upon information and belief, such subject matter was non-existent, as no Pennsylvania entity named English Riding Supply, Inc. existed as of March 18, 2008.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

83.    Consequently, the 2008 Agreement should be deemed void ab initio.

84.    By reason of the foregoing, Plaintiff seeks a declaratory judgment that the 2008 Agreement is void ab initio, and as a result, restitution to Plaintiff of her 50% interest in the brand, and elimination of any rights of Defendants or any of their assignees under the contract, and elimination of any obligations of Plaintiff under the contract, prohibition of any future use of Defendants (or any assignees) of the ROMFH Mark, and a requirement that Defendants pay Plaintiff, within thirty (30) days, all outstanding royalties owed to Plaintiff for any qualifying sales made for which royalties have not yet been paid.

**COUNT SIX**

**FOR BREACH OF CONTRACT FOR FAILING TO ACCURATELY AND TIMELY PAY AMOUNTS DUE UNDER THE CONTRACT**

(*As against English Riding Supply, Inc., ERS Equistrian, Inc., and ERS, LLC Defendants*)

85.    Plaintiff repeats and realleges paragraphs 1 through 84 hereof, as if fully set forth herein.

86.    Under the 2008 Agreement, Defendants agreed to pay Plaintiff a six percent (6%) royalty on the "ERS Dealer Q Price" for every product sold under the ROMFH mark.

87.    From June 2021 through present, Defendants have sold ROMFH-branded products that incorporated Plaintiff's designs but have failed to pay any royalties (or have underpaid) for each quarter's "ERS Dealer Q Price."

88.    Each missed or under-paid quarterly royalty from June 2021 onward constitutes a discrete breach.  Plaintiff is entitled to recover all royalties due for the period beginning June 2021 (four years before this action was filed) through the present.

89.    By failing to pay the 6% royalty on qualifying ROMFH sales from June 2021 to date, Defendants have breached the express terms of the 2008 Agreement.

90.    As a direct and proximate result, Plaintiff has suffered damages in excess of $75,000, including unpaid royalties, interest on late payments, and consequential loss of

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

income.

91.    Because this action is filed in mid-2025, Plaintiff's claims for breach of express royalties are timely under Cal. Civ. Proc. Code § 337 (four-year statute for written contracts), as they seek recovery only for unpaid royalties accrued after June 2021.

92.    For the foregoing, Plaintiff has been deprived of earned royalties and is entitled to compensatory damages, interest, and consequential damages arising from such breach.

## COUNT SEVEN

## BREACH OF FIDUCIARY DUTY

*(As against English Riding Supply, Inc., ERS Equestrian, Inc., and ERS, LLC Defendants)*

93.    Plaintiff incorporates by reference and realleges 1-92 of this Complaint as if fully set forth herein.

94.    In March 2008, Plaintiff and English Riding Supply, Inc. became fifty percent (50%) co-owners of the ROMFH trademark and brand under the 2008 Agreement. Subsequent assignments did not change Plaintiff's co-ownership status.

95.    Co-owners of an intellectual property asset owe one another fiduciary duties of loyalty and fair dealing.  Each co-owner must act in the other's best interests when exploiting and maintaining the jointly owned asset.

96.    Defendants breached their fiduciary duties within the last two years (i.e., after June 2023) by:

(a) Supplanting Plaintiff as designer.  Defendants hired a new designer in July 2023 and reduced Plaintiff's Spring 2024 collection to under thirty percent of her designs.  This act deprived Plaintiff, Plaintiff's equitable co-owner, of her right to participate in product development.

(b) Failing to restore or maintain ROMFH's e-commerce presence.  Even after mid-2023, Defendants did not reinstate www.Romfh.com, continuing to deny Plaintiff any channel to earn royalties.

(c) Concealing trademark assignments. Although Plaintiff co-owned the ROMFH mark, Defendants executed an IP Assignment on December 31, 2021 and a Notice of Security Interest without informing Plaintiff which English Riding Supply, LLC entity held the mark—failing to disclose material transactions that affected her ownership rights.

97. Because the replacement of Plaintiff as designer and the ongoing e-commerce failure occurred in July 2023 and thereafter, these breaches are within Pennsylvania's two-year statute of limitations for breach of fiduciary duty (42 Pa. C.S. § 5524(7)).

98. As a direct and proximate result, Plaintiff has suffered damages including lost royalties, reduction in the market value of her fifty percent interest, and loss of trademark goodwill.

99. Plaintiff is entitled to compensatory damages, disgorgement of any profits that rightfully belong to her, and equitable relief, including declaratory relief that Defendants violated their fiduciary duties.

## COUNT EIGHT

## UNJUST ENRICHMENT (IN THE ALTERNATIVE)

*(As against English Riding Supply, Inc., ERS Equestrian, Inc., and ERS, LLC Defendants)*

100. Plaintiff incorporates by reference and realleges 1-99 of this Complaint as if fully set forth herein.

101. In the event a court finds that no contract remedy exists (for example, if the 2008 Agreement is void or voidable), Defendants nonetheless have been unjustly enriched at Plaintiff's expense.

102. From 2010 through 2023, Plaintiff designed, developed, and promoted multiple ROMFH product lines—both in-house and under contract—as a co-owner and "online marketing designer". She invested her specialized knowledge, brand goodwill, and personal reputation into building ROMFH's market presence.

103. Defendants routinely sold ROMFH apparel incorporating Plaintiff's proprietary designs and brand goodwill. They generated significant revenue—through

retail, online, and discount channels—without paying Plaintiff full royalties or adequately compensating her for the value of her contributions.

104.   Defendants knowingly accepted and retained millions of dollars in profits derived from Plaintiff's designs, name, and social media following.  They refused to account to Plaintiff for the full value of those revenues, thereby depriving her of the benefit of her efforts.

105.   It would be inequitable for Defendants to retain these profits without compensating Plaintiff, who provided the design work and brand recognition that generated the revenue.

106.   Accordingly, in the alternative to any contract-based remedy, Plaintiff seeks restitution in the form of disgorgement of all profits and revenues that Defendants derived from Plaintiff's proprietary designs, name, and goodwill.

**COUNT NINE**

**ACCOUNTING AND CONSTRUCTIVE TRUST**

*(As against English Riding Supply, Inc., ERS Equestrian, Inc., and ERS, LLC Defendants)*

107.   Plaintiff incorporates by reference and realleges 1-106 of this Complaint as if fully set forth herein.

108.   An accounting is warranted because Defendants and Plaintiff were co-owners of ROMFH and its underlying goodwill. Defendants have refused to produce complete sales data, royalty statements, and financial records for ROMFH, despite Plaintiff's repeated demands.

109.   Defendants have consistently sold ROMFH products (including discount and off-channel lines) without paying Plaintiff or disclosing the full revenue generated.  They have also asserted conflicting assignments of the trademark, further obscuring which entity holds title and how revenues should be shared.

110.   Because Defendants hold the books, records, and revenues of the jointly owned ROMFH brand, equity requires an independent accounting.  Without it, Plaintiff cannot determine the full extent of Defendants' wrongful retention of profits and the

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

19

royalties due to her.

111.    In addition, a constructive trust should be imposed over any and all revenues, profits, or sales proceeds derived from ROMFH—past, present, and future—until Plaintiff receives her rightful share.  Defendants hold those funds in constructive trust for Plaintiff because they acquired and used them by virtue of their breach of fiduciary duty (Count Seven), breach of contract (Counts Six), and unjust enrichment (Count Eight).

112.    Plaintiff is therefore entitled to (a) an immediate accounting of all ROMFH revenues and profits since March 2008 (or at least since December 15, 2017); and (b) Imposition of a constructive trust over any ROMFH-related funds or assets traceable to Plaintiff's design work and trademark rights, so that those funds may be distributed to Plaintiff in accordance with equity and co-ownership principles.

## COUNT TEN

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

*(Against NCK Capital, LLC)*

113.    Plaintiff incorporates 1-112 of this Amended Complaint as if fully set forth herein.

114.    Before July 2023, Plaintiff had an existing economic expectancy in continuing to design and develop ROMFH product lines, which generated annual royalties of $95,000–$100,000.

115.    On or about December 31, 2021, NCK completed a majority recapitalization of the ERS Entities (the "NCK Recapitalization") and thereafter directed ROMFH's management.

116.    In July 2023, under NCK's control, Defendants hired a new designer in place of Plaintiff and instructed retailers to purchase discounted ROMFH product—conduct that was instigated, approved, and overseen by NCK.

117.    NCK knew of Plaintiff's design-for-hire relationships, royalties, and her fifty percent (50%) equity interest in ROMFH.  NCK's decision to replace Plaintiff was

designed to divert ROMFH product production (and associated royalties) away from Plaintiff to the new designer.

118.   NCK's interference was wrongful because it had no legitimate business justification to bar Plaintiff's continued design role—particularly given her ownership stake and prior performance—and because NCK's recapitalization agreement with the ERS Entities imposed fiduciary and contractual obligations to preserve Plaintiff's economic rights under the 2008 Agreement.

119.   As a direct and proximate result of NCK's wrongful interference, Plaintiff lost her prospective design contracts for the Spring 2024 and Fall 2024 collections, incurred lost royalties (in excess of $190,000), and suffered diminution of her fifty-percent (50%) equity interest in ROMFH.

120.   Plaintiff therefore seeks damages against NCK for tortious interference, in an amount to be proven at trial, including lost profits, lost royalties, diminution in brand value, and consequential damages.

## COUNT ELEVEN

## FALSE DESIGNATION OF ORIGIN / FALSE ENDORSEMENT

*(15 U.S.C. § 1125(a), against English Riding Supply, Inc., ERS Equestrian, Inc., and ERS Defendants)*

121.   Plaintiff incorporates 1-120 of this Complaint as if fully set forth herein.

122.   Plaintiff is the founder and original designer of ROMFH—her last name and the brand are coextensive with her personal identity and reputation in the equestrian apparel world.

123.   After completing a majority recapitalization on December 31, 2021, NCK Capital, LLC and its controlled ERS entities supplanted Plaintiff as the designer in July 2023, cutting her Spring 2024 collection to under thirty percent of her designs and hiring a new designer to create all other ROMFH lines.

124.   Despite Plaintiff's removal, Defendants (a) continue to market ROMFH apparel under the "ROMFH" brand and Plaintiff's last name; (b) advertise that Plaintiff

"designed" or "endorsed" current collections; and (c) use her social-media channels and prior goodwill to promote new product lines she did not create.

125. Defendants' use of "ROMFH" and Plaintiff's name in commerce falsely conveys that Plaintiff remains the designer, developer, or endorser of every ROMFH product—when in fact she was entirely excluded after July 2023.

126. Such false designation and representation is likely to cause confusion, mistake, or deception among consumers as to (a) the source or origin of the goods, and (b) Plaintiff's sponsorship, approval, or endorsement of those goods.

127. Defendants' conduct was willful and in bad faith, intended to trade on Plaintiff's reputation and divert purchasers to ROMFH lines for which Plaintiff receives no design credit or royalties.

128. As a direct and proximate result, Plaintiff has suffered and will continue to suffer irreparable injury—loss of goodwill, reputational harm, and loss of royalties—and has no adequate remedy at law.

129. Plaintiff is therefore entitled to preliminary and permanent injunction enjoining Defendants from using "ROMFH" or Plaintiff's name or likeness in any way that falsely represents her as designer or endorser; all damages sustained by Plaintiff, including Defendants' profits attributable to the false designation; treble damages and attorneys' fees for willful conduct; and such other relief as the Court deems just and proper.

## DEMAND FOR RELIEF

WHEREFORE, PLAINTIFF requests judgment as follows

A.    Declaratory judgment;

B.    Injunctive relief, including rescission, or in the alternative, reformation of the 2008 Agreement;

C.    Restitution;

D.    Compensatory damages;

E.    Consequential damages (including, without limitation, for reputational harm,

loss of goodwill, diminution of value, and lost profits);Defendants' profits;

F.    Treble damages;

G.    Plaintiff's reasonable attorney's fees and costs;

H.    Pre-judgment and post-judgment interest; and

I.    Granting Plaintiff such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury.

Dated: June 12, 2025                Respectfully submitted,

Katie Charleston Law, PC

By:   /s/ *Katie Charleston*
       Katie Charleston, Esq.
       Attorney for Plaintiff

## VERIFICATION

I am the Plaintiff in this action. I have read the foregoing First Amended Complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: Jun 10, 2025 _____    _____
Laura Corsi (Jun 10, 2025 13:59 CDT)

Laura F. Corsi

Plaintiff

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

24